David A. HORN, Plaintiff,

v.

UNITED STATES DEPARTMENT
OF ARMY, et al., Defendants.

Civil Action No. 00–1194(RBW).

United States District Court,
District of Columbia.

Sept. 29, 2003.

David A. Horn, Silver Spring, MD, Pro se.

Meredith Manning, Hogan & Hartson, L.L.P., Joel E. Wilson, Kristin M. Dadey, Thomas M. Ray, Washington, DC, for federal defendants.

Jeffrey B. Henry, Kooritzky & Associates, Langley Park, MD, Pro se.

## MEMORANDUM OPINION

WALTON, District Judge.

This lawsuit was brought by the *pro se* plaintiff, David A. Horn, against his former employer, the Department of the Army, and his former attorney, Jeffrey B. Henry. Before the Court at this time are the motions of the federal defendant and Mr. Henry for dismissal or, alternatively, for summary judgment. The Court will grant the defendants' motions for summary judgment for the reasons stated below.

### I. Background

Plaintiff was employed at the Walter Reed Army Medical Center ("WRAMC") for over eleven and a half years. Compl. at 4.[1] Prior to his resignation, plaintiff was a Medical Records Technician, G–5, in

---

1. References to "Compl." are to the amended complaint filed by plaintiff on June 5, 2000.

WRAMC's Plastic Surgery Clinic. *Id.* at 10. His complaint alleges that he had to work at WRAMC "under oppression", *id.* at 1; that he was discriminated against for revealing "the waste, fraud and abuse" being committed by his superiors, *id.* at 3; and that he was "denied promotion, and discriminated against with unfair and prohibited personnel practices...." *Id.* at 2. Mr. Horn filed an Equal Employment Opportunity ("EEO") complaint against the agency and, through the mediation process that followed, a settlement was reached. *Id.* at 5–6. However, having agreed to the terms of the settlement, Mr. Horn now argues that the settlement was achieved "through collusion and deception," *id.* at 2, on the part of the agency and his own attorney, who he claims "failed to represent [him] properly...." *Id.* at 5. He seeks a plethora of relief from this Court, including two million dollars, reinstatement to his position at WMRAC; recognition "for stopping waste, fraud and abuse of power[ ] at the Agency[,]" an "official apolog[y], to be presented to the Honorable Congressman Albert R. Wynn, and to [himself], for the Agency being untruthful and the slanderous information provided to the Congressman[,]" and remand of his 1996 and 1999 discrimination claims to the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 10–11.

Although plaintiff's complaint recounts an interesting story of alleged discrimination, fraud and collusion, plaintiff's tenure as a WMRAC employee, as revealed by the documents submitted by the federal defendant, tell a less intriguing story. According to the documentary evidence, on May 3, 1999, plaintiff submitted an "Inspector General Action Request[,]" in which he requested that an investigation be conducted regarding "two employees [who] were allowed to leave work early every day for over 5 years or more...." Federal Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment ("Fed. Def.'s Mot."), Exhibit ("Ex.") 1 (Inspector General Action Request dated May 3, 1999). Plaintiff made the request after he was suspended for five days following the report he made to his supervisors about the alleged leave abuses. *Id.* As a result of Mr. Horn's request, the Inspector General conducted an investigation and referred Mr. Horn's complaint to the Office of Special Counsel, which requested review by the Merit Systems Protection Board ("MSPB"). Fed. Def.'s Mot., Ex. 2 (Department of the Army Memorandum dated September 10, 1999). On June 10, 1999, plaintiff filed "a formal administrative complaint of discrimination [with] the Equal Employment Opportunity (EEO) office at Walter Reed." Federal Defendant's Statement of Material Facts Not in Dispute ("Fed. Def.'s Facts") ¶ 4. In his administrative complaint, plaintiff alleged that he had been discriminated against on the basis of his race and sex. Fed. Def.'s Mot., Ex. 3 (Formal Complaint of Discrimination filed by David A. Horn dated June 10, 1999).[2] This alleged discrimination consisted, in part, of a five day suspension and demotion to the position of Medical Clerk (G–S 4/8), exclusion from a clinical staff office picture, white employees being afforded "longer lunch breaks," and entry into his "office door without first knocking ... [by] persons of non-color ... even after [he] had posted a sign to knock before entering," despite the fact that "[t]he Staff in the Clinic [would] knock before entering a white person's office." *Id.* at 1–2. Plaintiff also alleged that he had been the victim of retaliation for "filing a com-

---

**2.** Attached to plaintiff's "Formal Complaint of Discrimination" are three typewritten pages containing plaintiff's specific allegations. Because these pages are not numbered, citations to the pages are made according to their sequential order.

plaint with the EEO Office ... in April of 1996[,]"; for "initiating mediation[ ] through the Alternative Dispute Resolution on 13 November, 1996[,]" for his Whistleblowing activities which consisted of "alerting the Walter Reed Branch Office of the 3d Military Police Group ... of Fraud, Waste and Abuse of Power in November through December of 1998 that occurred ... and also for initiating Mediation with (ADR) again in Dec. of 1998...." *Id.* at 1.

On August 19, 1999, plaintiff filed an appeal with the MSPB regarding his suspension, demotion and job detail. Def.'s Mot., Ex. 13 (MSPB Petition for Appeal dated August 19, 1999). Approximately two months later, on October 20, 1999, Steve Roberson, an Office of Complaint Investigations ("OCI") Mediator, conducted a mediation session at WRAMC regarding plaintiff's EEO complaints. Fed. Def.'s Facts ¶ 7; Fed. Def.'s Mot, Ex. 14 (Declaration of Steven W. Roberson dated April 16, 2001) ("Roberson Decl.") ¶ 1.[3] Prior to the mediation session, WMRAC's attorney, Eric O'Shea, informed Mr. Horn and his attorney, Jeffrey B. Henry, that "Mr. Horn's Supervisors had initiated efforts to propose Mr. Horn's removal from his position and from Federal Service for misconduct." Fed. Def.'s Mot., Ex. 17 (Declaration of Eric M. O'Shea, Labor and

Employment attorney for WRAMC dated April 18, 2001) ("O' Shea Decl.") ¶ 3.

As a result of the mediation session, which lasted three to four hours,[4] a settlement agreement was reached. *Id.* ¶ 4. In the agreement, the Agency agreed to several conditions, including paying plaintiff a lump sum of $17,628; cancelling plaintiff's April 7, 1999 suspension and amending plaintiff's timecard to indicate that he had been on "Leave Without Pay status" for those days; amending plaintiff's civilian evaluation report for the rating period of April 1, 1999 to March 31, 1999 to indicate more favorable ratings than plaintiff had received; and granting plaintiff paid administrative leave from the day following the execution of the settlement agreement to his effective resignation date of December 1, 1999. Fed. Def.'s Mot., Ex. 5 (Settlement Agreement dated October 20, 1999) ¶ 4 (the "Agreement"). On plaintiff's part, he agreed to withdraw "with prejudice his discrimination complaints filed against the Agency and his MSPB IRA Appeal ... [,] waive his right to pursue administrative or judicial action in any forum concerning the matters raised in these complaints and [not make his claims] the subject of future litigation." *Id.* ¶ 5(a). Plaintiff also agreed to resign from his position and from Federal Service effective December 1, 1999;[5] to list WRAMC's Ci-

---

**3.** The federal defendant notes that during the processing of his EEO complaint and MSPB appeal, plaintiff continued to "engage in misconduct[,]" including "Insubordination ... [,]Creating a Disturbance by bumping and pushing other employees; and ... Creating a Disturbance through non-cooperation, disruptive behavior, and wild accusations against staff." Fed. Def.'s Facts ¶ 6. As a result of plaintiff's conduct, his supervisors initiated the process for plaintiff's removal. *Id.; see also* Fed. Def.'s Mot., Ex. 17 (Declaration of Eric M. O'Shea, Labor and Employment attorney for WRAMC dated April 18, 2001) ("O'Shea Decl.") ¶ 3.

**4.** Plaintiff argues that his counsel was one hour late for the mediation session, and thus the session actually lasted two to three hours, not three to four hours. Plaintiff's Motion to Deny Federal Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment ("Pl.'s Mot."), Plaintiff Statement of Material Facts With Documented Evidence, Not Disputed ("Pl.'s Facts") ¶ 6.

**5.** The settlement agreement stated that it would not become effective until such time as plaintiff's formal resignation documents were received. Fed. Def.'s Mot., Ex. 5 ¶ 5(b).

vilian Personnel Office as a point of contact for job references; and accept the lump sum payment as full compensation for "any and all claims for reimbursement of medical expenses, compensatory damages, and any and all other monetary claims arising out of these complaints." *Id.* ¶¶ 5(b), 5(c), 6. Notably, plaintiff agreed to "fully release[ ] and forever discharge[ ] the Agency ... and [its] employees from any and all claims ... he has held, or may now or in the future hold ... arising from the facts which led to these complaints. *Id.* ¶ 7. In addition, the Agreement provided that plaintiff had been afforded the "full opportunity to seek advice and consultation from an attorney and after a reasonable time to consider its terms." *Id.* ¶ 11.[6]

On October 22, 1999, plaintiff tendered his resignation to WMRAC, which was designated to become effective December 1, 1999. Fed. Def.'s Mot., Ex. 6. On that same date, the parties submitted a copy of the Settlement Agreement to the administrative law judge assigned to the matter, who determined that the agreement was "lawful on its face" and that "the parties understood its terms and freely and voluntarily entered into it." Fed. Def.'s Mot., Ex. 7 (Initial Decision dated November 2, 1999). Therefore, the judge dismissed plaintiff's appeal "as settled." *Id.* On November 2, 1999, WRAMC tendered payment to plaintiff of the agreed to sum of $17,628.00. Fed. Def.'s Mot., Ex. 6.

Although the matter appeared to have been resolved to the satisfaction of all involved, in his petition for MSPB Review, dated November 30, 1999, plaintiff alleged

"that the settlement agreement that was reached on October 20, 1999[,] by the Appellant and the Agency ... was done through deception ..., involuntarily with fear of reprisal ... [,] also [with] fraud and collusion and misconduct [and] misrepresentation on the part of the Agency, the EEO, the OCI Investigator, and the Appellant's Counsel." Fed. Def.'s Mot., Ex. 15 (Petition for MSPB review dated November 30, 1999). On December 7, 1999, plaintiff filed an appeal "of [his] suspension, demotion and detail." Fed. Def.'s Mot., Ex. 8 (Letter to Clerk of the MSPB from David A. Horn dated December 7, 1999). On April 20, 2000, the MSPB issued a final order denying plaintiff's petition on the ground that "there [was] no new, previously unavailable evidence" that would warrant reversal of the administrative judge's dismissal of plaintiff's appeal. Fed. Def.'s Mot., Ex. 9. Thereafter, on May 30, 2000, plaintiff filed his complaint in this Court.

## II. Analysis

### A. Jurisdictional Issues

As a preliminary matter, this Court is compelled to address the issue of whether it has subject matter jurisdiction and to take exception with the prior ruling on this subject that was made by the judge previously assigned to this matter, that this Court, and not the Court of Appeals for the Federal Circuit, has subject matter jurisdiction over plaintiff's complaint. Order file stamped November 28, 2000 ("Order") at 4. The prior Order was issued in response to the federal defendant's previously filed motion to dismiss this matter

---

6. The Agreement also provided plaintiff relief in the event the Agency failed to adhere to its obligations to plaintiff. Specifically, plaintiff would have the right to notify the MSPB or the director of the Equal Employment Opportunity Compliance and Complaints Review Agency of the alleged non-compliance and

"request that the terms of the Settlement Agreement be specifically implemented or alternatively, [that his] complaints be reinstated for further processing from the point processing ceased under the terms of the Settlement Agreement." Fed. Def.'s Mot., Ex. 5 ¶ 10.

for lack of jurisdiction and failure to state a claim, or alternatively, for summary judgment. The defendant made two arguments in support of a finding that this Court was without subject matter jurisdiction: first, that this Court did not have "jurisdiction to review actions taken by the MSPB under the Wistleblower [sic] Protection Act[,]" and second, that this Court was "without jurisdiction over discrimination complaints that were settled at the administrative level." *Id.* In holding that the Court had jurisdiction over plaintiff's complaint, the prior judge ruled that pursuant to 5 U.S.C. § 7703(b), this Court has jurisdiction over mixed cases, *i.e.*, cases in which "a plaintiff raises both discrimination and non-discrimination claims...." *Id.* The Court concluded that this is a " 'mixed case' because the plain language of the settlement agreement incorporates plaintiff's retaliatory and discrimination claims." *Id.* at 5.[7] Regarding the defendant's second jurisdictional argument, the Court concluded that it had jurisdiction because it would not be "solely reviewing the validity of the settlement agreement, but rather [would] be reviewing the Administrative Judge's decision to accept the agreement." *Id.*[8]

Pursuant to the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7703(b)(1) (2000), "a petition to review a final order or final decision of the [Merit System Protection] Board shall be filed in the United States Court of Appeals for the Federal Circuit." However, in cases involving claims of discrimination, the plaintiff is entitled to *de novo* review in federal district court. *See* 5 U.S.C. § 7703(b)(2). Thus while section 7703(b)(1) gives the Federal Circuit jurisdiction over final decisions of the MSPB, pursuant to section 7703(b)(2), a district court has jurisdiction over "[c]ases of discrimination subject to the provisions of section 7702...." *Id.; see also Powell v. Dep't of Defense*, 158 F.3d 597, 598 (D.C.Cir.1998). For plaintiff's case to be entitled to judicial review by a district court he "must satisfy two requirements. First, he must have been 'affected by an action which the employee ... may appeal to the [MSPB].'" *Powell*, 158 F.3d at 598 (quoting 5 U.S.C. § 7702(a)(1)(A)). "Second, the employee must allege 'that a basis for the action was discrimination prohibited by—(i) section 717 of the Civil Rights Act of 1964....'" *Id.* (quoting 5 U.S.C. § 7702(a)(1)(B)).

■ Merely because a plaintiff alleges claims of discrimination in his complaint, however, does not vest this Court with subject matter jurisdiction. In a case decided after the prior Order was issued, and which is remarkably similar to this case, the Federal Circuit held that it, not the district court, had jurisdiction over plaintiff's claims that she had been coerced into signing a settlement agreement, which resolved her claims of discrimination regarding the termination of her employment. *Franklin v. United States Postal Service*, 61 Fed.Appx. 686 (Fed.Cir. 2003). The Federal Circuit stated that although the plaintiff's "amended and substituted complaint [sought] affirmative re-

---

7. As a result of this ruling, none of the parties present any arguments regarding the Court's subject matter jurisdiction in this case, and all agree that this is a "mixed" case. *See* Fed. Def.'s Mem. at 4–5; Plaintiff's Reply to the Defendants Reply to Plaintiff's "Motion to Deny" Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Pl.'s Opp'n") at 1.

8. The Court also rejected defendant's request for summary judgment on the issue of whether plaintiff voluntarily signed the settlement agreement finding that there were "genuine issues of material fact in dispute ..." concerning that issue. Order at 5.

lief under 42 U.S.C. §§ 1981 and 1983, as well as the Fourteenth Amendment, for unlawful termination of her employment[,] . . . the pleading of discrimination [did] not necessarily preclude the exercise of jurisdiction by [the Federal Circuit] for limited purposes." *Id.* at 687 (citations omitted). Because the MSPB had not decisively rendered an opinion on the plaintiff's discrimination claims, the *Franklin* court concluded that it had "jurisdiction to review the Board's dismissal of Franklin's appeal because the controlling issue is a threshold one that, much like the issue of timeliness, does not depend on the merits of an underlying discrimination claim. The propriety of the MSPB's dismissal turns instead on whether Franklin entered into a valid settlement agreement with the Postal Service." *Id.* at 687–88. *See also Ballentine v. Merit Systems Protection Bd.*, 738 F.2d 1244, 1247 (Fed.Cir.1984) ("[I]t is clear that the judicially reviewable action by the MSPB which makes an appeal a 'case of discrimination' under § 7703(b)(2) that can be filed in district court is that the MSPB *has decided 'both the issue of discrimination and the appealable action . . . .'*") (quoting 5 U.S.C. § 7702(a)(1)) (emphasis added). *But see Downey v. Runyon*, 160 F.3d 139, 144 (2d Cir.1998) (rejecting *Ballentine* and holding that employee could seek review of his discrimination claims in the district court, despite the fact that the MSPB had dismissed plaintiff's appeal because it was untimely and had not reached the merits of his discrimination claims). Thus, in this case, because the MSPB never issued a ruling on the merits of plaintiff's discrimination claims, this Court

would conclude, if the jurisdictional question was before it on a clean slate, that the Federal Circuit and not this Court, has proper jurisdiction over plaintiff's complaint.

■ However, this Court will not dismiss this matter for lack of subject matter jurisdiction for several reasons. This decision is primarily based on the law of the case doctrine, which provides that "the *same* issue presented a second time in the *same* case in the *same* court should lead to the *same* result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C.Cir.1996) (emphasis in original). This doctrine is applicable "as much to decisions of a coordinate court in the same case as to a court's own decisions." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citations omitted).[9] "[T]he law of the case [doctrine] turns on whether a court previously 'decide[d] upon a rule of law' . . .—not on whether, or how well, it explained the decision." *Christianson*, 486 U.S. at 817, 108 S.Ct. 2166. Thus, the doctrine is applicable to "questions decided 'explicitly or by necessary implication.'" *LaShawn A.*, 87 F.3d at 1394 (citation omitted). Clearly, the prior ruling in this case concluded that this Court is vested with subject matter jurisdiction because plaintiff's claim constitutes a "mixed case," *i.e.*, one involving claims of discrimination and non-discrimination.

■ Although the Court is not compelled to adhere to the law of the case doctrine in situations where "there is an intervening change in the law or if the

---

9. While "[t]his principle must be followed by the district court when an *appellate* court has ruled on a matter of law in the case[,] . . . [i]t is discretionary . . . for a court that is considering whether to revisit its *own* prior decisions in the same case." *Harris v. Key Bank Nat'l Ass'n*, 193 F.Supp.2d 707, 711 (W.D.N.Y.2002) (citations omitted) (emphasis in original). Thus, in the second category of cases, "the application of the law-of-the-case doctrine 'does not limit a court's power to reconsider its own decisions prior to final judgment.'" *Id.* (citations omitted).

previous decision was 'clearly erroneous and would work a manifest injustice[,]'" *Kimberlin v. Quinlan,* 199 F.3d 496, 500 (D.C.Cir.1999) (quoting *LaShawn A.,* 87 F.3d at 1393) (internal quotation marks omitted), neither situation is operative here for the following reasons. First, the issue of whether or not a district court has subject matter jurisdiction over a plaintiff's complaint where the underlying predicate for the exercise of jurisdiction is a settlement agreement that resolved federal discrimination claims, is not a clearly established legal proposition. *See, e.g., Harms v. Internal Revenue Service,* 321 F.3d 1001, 1008 (10th Cir.2003) ("A decision need not be reached by the MSPB on the merits of the discrimination issue, however, for the appeal to constitute a 'case of discrimination.' 5 U.S.C. § 7702(a)(1). This is clear from the statutory language in § 7702(a)(1)(B) which specifies only that the employee must *allege* that a basis for the action was unlawful discrimination for the appeal to fall under § 7702(a)(1). This court ... holds that when the MSPB has jurisdiction over an appeal under § 7702(a)(1) but dismisses the appeal on procedural grounds, the federal district court has jurisdiction to review de novo the decision of the MSPB.") (emphasis in original); *Downey,* 160 F.3d at 144 ("The CSRA does not express a requirement that the MSPB shall determine the merits of the discrimination claim in order for the decision to be 'judicially reviewable.'") (footnote omitted). Because there is a split in the circuits regarding whether the merits of the discrimination claim must be decided by the MSPB before an action may be brought in a district court, this Court cannot conclude that the prior ruling was clearly erroneous. *Cf. In re Estate of Delaney,* 819 A.2d 968, 994 (D.C.2003) (Appellant ... presented no additional facts that might establish that the court's 1994 interpretation of the will was clearly erroneous, nor did he bring to light a change in substantive law that rendered the 1994 order clearly erroneous. Since the 1994 order was sufficiently final and not clearly erroneous, it was binding on the trial court in 1999 under the law of the case doctrine.). Second, although the *Franklin* decision dictates a result different than that reached by the judge previously assigned to this case, it is not clear that a ruling of the Federal Circuit on the subject at issue is binding on this Court.[10] *See District of Columbia v. American Excavation Co.,* 64 F.Supp. 19, 19–20 (D.D.C.1946) (stating that legal authority from other circuit courts while "persuasive ... nevertheless

10. The Court notes that deference to the Federal Circuit is warranted in this area as it is the court that has been vested by Congress with original jurisdiction over MSPB appeals involving non-discrimination issues. However, because the Federal Circuit does not have exclusive jurisdiction over non-discrimination claims, as the district courts may adjudicate such claims in "mixed cases," the Court concludes that it is not clear that the prior judge would have been required to adhere to *Franklin's* holding if it had been issued at that time and thus cannot conclude that there has been an intervening change in controlling law to warrant non-adherence to the law of the case doctrine. This situation is unlike the area of patent law where the district court is required

"in general[ ] to follow the substantive patent law as set forth by [the Federal Circuit] in 'patent' cases and to follow the 'general' laws as set forth by their regional circuit court in non-patent cases." *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1573 (Fed. Cir.1984), *overruled on other grounds, Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). As the *Panduit* court observed, the Federal Circuit is not "preclud[ed] ... from following existing or creating new law regarding any and all matters in cases where th[e] court has *exclusive* jurisdiction over *all appeals* from a particular court." *Id.* at 1575 (emphasis in original) (citing 28 U.S.C. § 1295(a)(3) and 1295(a)(5) (1982)).

... [is] not binding or controlling on this court, in the absence of any ruling in this jurisdiction."); *see also Colby v. J.C. Penney Co.,* 811 F.2d 1119, (7th Cir.1987) ("Bearing in mind the interest in maintaining a reasonable uniformity of federal law ... we give most respectful consideration to the decisions of the other courts of appeals and follow them whenever we can. Our district judges should, of course, do likewise ... [however] neither this court nor the district courts of this circuit give the decisions of other courts of appeals automatic deference[.]") (citation omitted); *Cohen v. Austin,* 833 F.Supp. 512 (E.D.Pa. 1993) (holding in case regarding MSPB appeal that precedent cited by defendant was "not binding on th[e] Court, as it [was] a Federal Circuit decision."). Further, it is notable that the *Franklin* decision was "not selected for publication in the Federal Reporter" and, pursuant to Fed. Cir. R. 47.6, it is "not citable as precedent." 61 Fed.Appx. at 686. Therefore, in the absence of controlling authority, there is no reason not to adhere to the law of the case doctrine. *See Nat'l Treasury Employees Union v. Federal Labor Relations Auth.,* 30 F.3d 1510, 1516 (D.C.Cir.1994) ("The doctrine of the law of the case ... contains an exception when the law itself has changed, ... or when an intervening interpretation of the law has ·been issued by a *controlling* authority.") (citations omitted) (emphasis added); *Alliance for Cannabis Therapeutics v. Drug Enforcement Admin.,* 15 F.3d 1131, 1134 (D.C.Cir.1994) ("[C]ourts will reconsider previously decided questions in such exceptional cases as those in which there has been an intervening *change of controlling law,* or new evidence has surfaced, or the previous disposition has resulted in clear error or manifest injustice.") (citation omitted) (emphasis added). Moreover, the *Franklin* decision was not available when the prior judge rendered his ruling on the

defendant's prior motion to dismiss. Third, although the Court disagrees with the reasoning of the prior judge on the issue of subject matter jurisdiction, and even though the *Ballentine* decision was issued before the issuance of the prior Order in this case, again, as a Federal Circuit opinion it is not clear that it is binding on this Court. Finally, because this matter has been pending for over three years, almost two of those years being prior to this judge's appointment to this bench, the Court finds that the interests of justice clearly favors addressing the merits of this matter, rather than transferring this case to the Federal Circuit. As the Supreme Court noted in *Christianson,* "[p]erpetual litigation of any issue—jurisdictional or nonjurisdictional—delays, and therefore threatens to deny, justice." 486 U.S. at 816 n. 5, 108 S.Ct. 2166. Thus, the Court stated that

> [t]he age— old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists has always worked injustice in particular cases. Parties often spend years litigating claims only to learn that their efforts and expense were wasted in a court that lacked jurisdiction. Even more exasperating for the litigants (and wasteful for all concerned) is a situation where ... the litigants are bandied back and forth helplessly between two courts, each of which insists the other has jurisdiction. Such situations inhere in the very nature of jurisdictional lines, for as our cases aptly illustrate, few jurisdictional lines can be so finely drawn as to leave no room for disagreement on close cases.

*Id.* at 818, 108 S.Ct. 2166 (citations omitted). This dilemma, the *Christianson* Court noted, can be reconciled "by adhering strictly to principles of law of the case[,]" as "[t]he doctrine of the law of the

case is . . . a heavy deterrent to vacillation on arguable issues." *Id.* at 819, 108 S.Ct. 2166 (citations omitted). Thus, "[w]hile adherence to the law of the case will not shield an incorrect jurisdictional decision . . . [,]" if the exercise of jurisdiction by a court is "plausible, its jurisdictional inquiry is at an end." *Id.* (citations omitted).

This guidance from the *Christianson* Court is instructive. As noted above, conflict exists regarding whether or not the merits of a discrimination claim in a "mixed case" must be addressed by the MSPB in order for subject matter jurisdiction to be vested in this Court, which the Second and Tenth circuits held is not a prerequisite to a district court exercising jurisdiction over a MSPB appeal, or whether subject matter jurisdiction lies in the Federal Circuit when the discrimination claim was not addressed by the MSPB, as held in *Franklin.* Thus, for these reasons, this Court will adhere to the prior judge's determination that this Court has subject matter jurisdiction over this matter because it is a "mixed case" [11] and will reach the merits of plaintiff's claims.

### B. Standard of Review

Because the Court has referred to documents outside the pleadings, it will consider the defendants' motions seeking dismissal, or alternatively summary judgment, as a motion for summary judgment. Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "a reason-

able jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255, 106 S.Ct. 2505. Summary judgment is mandated after there has been "adequate time for discovery . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment, nonetheless, is a "drastic remedy, [and therefore] courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Greenberg v. Food & Drug Admin.,* 803 F.2d 1213, 1216 (D.C.Cir.1986). Summary judgment is accordingly not appropriate, for example, where "the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance . . ." *Id.* (citations omitted). Furthermore, when reviewing the evidence, "all inferences must be drawn in favor of the nonmoving party[.]" *Coward v. ADT Security Systems, Inc.,* 194 F.3d 155, 158 (D.C.Cir.1999); *Aka v. Washington Hosp. Center,* 156 F.3d 1284, 1295 (D.C.Cir. 1998).

██ When reviewing a decision of the MSPB, this Court will reverse the Board's

---

11. The *Franklin* court noted that it has "jurisdiction to consider, for example, whether the Board properly dismissed an appeal as being untimely, regardless of whether the appeal is mixed." 61 Fed.Appx. at 687 (citation omitted). Contrary to this statement, the Court of Appeals for the Tenth Circuit has noted that

"[t]he circuits . . . are split over whether the Federal Circuit has exclusive jurisdiction over MSPB's dismissal of appeals filed under § 7702(a)(1) on procedural grounds." *Harms,* 321 F.3d at 1008 (*comparing Ballentine,* 738 F.2d at 1247 *with Downey,* 160 F.3d at 144–45).

determination if it concludes that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]"; if it was "obtained without procedures required by law, rule, or regulation being followed"; or, if it is "unsupported by substantial evidence[.]" 5 U.S.C. § 7703(c); *see also Barnes v. Small,* 840 F.2d 972, 979 (D.C.Cir.1988) (citing 5 U.S.C. § 7703(c)). It is the plaintiff's "burden [to] establish[ ] error in the Board's decision." *Tiburzi v. Dep't of Justice,* 269 F.3d 1346, 1351 (Fed.Cir.2001) (citation omitted).

## C. Whether the Findings of the MSPB Were Erroneous

■ Despite the numerous allegations made in plaintiff's complaint and his responses in opposition to the pending motions,[12] at issue in this matter at this time is whether or not the Board's decision, which affirmed the administrative law judge's ruling that the settlement agreement plaintiff signed was lawful and had been signed voluntarily by plaintiff, should be overturned. In resolving this issue, the Court "must determine whether there is substantial evidence supporting the administrative judge's determination that the settlement agreement was 'lawful on its face and entered into freely by both parties.' " *Franklin,* 61 Fed.Appx. at 688.

■ Plaintiff makes several arguments regarding why the Board's decision should not be affirmed by this Court. First he argues that "[t]he Settlement Agreement is FAULTY in that it identifies a mixed case, but the MSPB (AJ) was not granted the opportunity by the Agency nor the Plaintiffs [sic] former Attorney

to review documents requested by the . . . Board that specifically relates to the EEO Issues of Race and Sex[ ] retaliation." Plaintiffs [sic] Reply to the Defendants Reply to Plaintiff's 'Motion to Deny' Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Pl.'s Opp'n") at 2. The Court construes this argument as alleging that the decision of the Board should be reversed because the ALJ failed to consider plaintiff's complaints of discrimination, and the documents that supported those complaints. Failure to consider relevant evidence can warrant reversal of an administrative decision. However, the Court cannot find that such a result is warranted here where the parties had reached a full settlement of plaintiff's claims and thus, the ALJ concluded that the appeal should be dismissed because it was settled. Def.'s Mot. Ex. 7. Stated differently, once there had been a settlement of the claims before her, the administrative judge had no need to determine the merits of the parties' respective positions regarding plaintiff's discrimination claims. Thus, the Court concludes that the fact that ALJ did not consider the merits of plaintiff's discrimination complaints, or evidence in support of those complaints, is not relevant to whether he signed the agreement voluntarily.

■ Second, plaintiff asserts that the Agreement did not encompass all of his claims against the agency. Plaintiff states that "[t]he Settlement Agreement identifies only work related issues as disputes, that were actually talked about, and does not show any compromise of the disputed issues of discrimination being settled in

12. On June 5, 2002, the Court held a status conference at which time it informed plaintiff that he would be allotted time in which to file a supplement to the defendants' pending motions, which should adhere to the standards

enunciated by the Court and reiterated in the Court's order issued pursuant to *Fox v. Strickland,* 837 F.2d 507 (D.C.Cir.1988) and *Neal v. Kelly,* 963 F.2d 453 (D.C.Cir.1992), which the Court issued to plaintiff on June 6, 2002.

the form of negotiated language of the numerous discrimination complaints omitted from the Settlement Agreement." Pl.'s Opp'n at 3. However, the language of the Agreement itself belies plaintiff's contentions. Paragraph five of the Agreement states that plaintiff

> withdraws with prejudice his discrimination complaints filed against the Agency and his MSPB IRA Appeal. . . . Complainant also agrees to waive his right to pursue administrative or judicial action in any forum concerning the matters raised in his complaints and that they will not be made the subject of future litigation.

Def.'s Mot., Ex. 5, ¶ 5. Significantly, plaintiff agreed to "fully release[ ] and forever discharge[ ] the Agency . . . and [its] employees *from any and all claims . . . he has held, or may now or in the future hold . . . arising from the facts which led to* these complaints." *Id.* ¶ 7 (emphasis added). Accordingly, the Court must reject plaintiffs arguments that the Agreement did not encompass all of his discrimination complaints.

 Third, and perhaps most significantly,[13] plaintiff argues that the Agreement should be found involuntarily because he signed it under duress and coercion. Plaintiff attempts to demonstrate that he was coerced in two main ways. First he asserts that the action of

the agency's counsel, Eric O'Shea, informing plaintiff prior to the start of the mediation session[14] that "Mr. Horn's Supervisors had begun efforts to propose Mr. Horn's removal from his position and from Federal Service for misconduct[,]" O'Shea Decl. ¶ 3, mandates a finding that he did not sign the Agreement voluntarily because he was "force[d] . . . to sign [the Agreement], with threats of retaliation, and loss of [e]mployment." Pl.'s Opp'n at 6. In addition, plaintiff states that his attorney indicated to him, apparently during a break in the negotiations, that the Agency had "suspended [him], and if [the plaintiff went] back into the mediation room and [did] not sign the settlement agreement [the Agency] would fire [him]." *Id.*

 "Those who employ the judicial appellate process to attack a settlement through which controversy has been sent to rest bear a properly heavy burden." *Asberry v. United States Postal Service,* 692 F.2d 1378, 1380 (Fed.Cir.1982). In order to have the Court set aside the settlement agreement, plaintiff "must show that the agreement is unlawful, was involuntary, or was the result of fraud or mutual mistake." *Sargent v. Dep't of Health & Human Services,* 229 F.3d 1088, 1091 (Fed.Cir.2000) (citations omitted).

The Federal Circuit has routinely denied claims similar to those made by plaintiff in

---

13. To the extent that plaintiff argues that his signature on the "Appellant Response to Agency's Interrogatories" was forged, Pl.'s Stmt. ¶ 3, the Court concludes that whether plaintiff's signature was forged on this document is not a material issue that must be resolved because it in no way impacts on whether the Settlement Agreement was voluntarily signed by plaintiff.

14. Apparently, plaintiff's attorney had previously informed plaintiff, on October 14, 1999, prior to the mediation session, that "if [plaintiff] did not combine the complaints against

the Agency and except [sic] the settlement offer of 37,000.00 being offered to me by the Agency that he would walk away from the case that very instant even before the MSPB Administrative Judge was to call." Pl.'s Stmt. ¶ 7. However, this alleged threat by plaintiff's former counsel evidently did not have an effect on plaintiff who states that he "was not amused by [Mr. Henry's'] underhanded tactics . . ." and he "called [his][w]ife at work to alert her of the changes taking place with [his][a]ttorney, and that [he] was not about to settle at any price." *Id.*

affirming Board decisions upholding the voluntariness of settlement agreements. In a case factually similar to the present one, the Federal Circuit affirmed a Board decision concluding that the plaintiff had voluntarily entered into a settlement agreement despite his allegations that he had signed "the agreement under 'duress and extreme coercion' by his counsel and the administrative law judge." *Tiburzi*, 269 F.3d at 1351. The plaintiff in *Tiburzi* had reached an oral settlement agreement regarding his removal from his position as a special agent with the Drug Enforcement Agency ("DEA"). *Id.* at 1349. The agreement provided that plaintiff would resign from his position, would not apply for any other positions with the DEA, and would withdraw his appeal and waive any claims against the agency arising from the matter. *Id.* On the agency's part, it agreed to state that the plaintiff had resigned from his position "for personal reasons" and to provide "a neutral reference . . . to potential future (non-law enforcement) employers. . . ." *Id.* at 1349–50. Thereafter, the administrative law judge dismissed plaintiff's appeal, concluding "that the parties 'lawful[ly] and voluntarily entered into' the oral settlement agreement. . . ." *Id.* at 1350. However, after orally agreeing to the terms of the settlement, the plaintiff refused to sign a written version of the settlement agreement and filed a *pro se* petition for review of the administrative law judge's finding that the agreement was voluntarily entered into, on the ground that it had resulted from "duress and extreme coercion" by plaintiff's

counsel and the administrative law judge. *Id.* at 1351.[15]

In rejecting the plaintiff's claims, the court stated that "[a] bare allegation of coercion is not sufficient to set aside the parties' settlement agreement." *Id.* at 1355. Rather, the court noted, the plaintiff "must make a 'showing of wrongful conduct necessary to shift the burden of proof on the allegation' of the attorney's and administrative judge's coercion from himself to the agency." *Id.* (citation omitted). In concluding that the plaintiff had failed to meet this burden, the court stated

[Petitioner] provides only unsubstantiated allegations that his counsel and the administrative judge made certain statements to him off the record during the hearing to coerce his acceptance of the oral agreement. . . . Even if those statements were made, they would not be sufficient to invalidate the oral agreement. Mr. Tiburzi had to choose at the hearing between unpleasant alternatives: resigning from the agency under the terms of the oral agreement, or facing the (likely) rejection of his Board appeal and the resulting removal for cause from his position by the agency. We have repeatedly recognized that an employee's dissatisfaction with the options that an agency has made available to him is not sufficient to render his decision to resign or retire involuntary. . . . The evidence leads us to conclude that petitioner has not presented substantial evidence that his counsel or the administrative judge coerced peti-

---

15. The plaintiff in *Tiburzi* also argued that the oral settlement agreement was not binding because he had not signed the official written agreement. 269 F.3d at 1351–52. The court rejected this argument, stating that "[i]t is well-settled under our cases that if no written agreement is forthcoming, the oral agreement still governs." *Id.* at 1352. In the case before it, the court stated that there was "substantial evidence show[ing] that the parties intended the oral settlement agreement to be binding and enforceable even absent the execution of a subsequent written agreement." *Id.* at 1354.

tioner's acceptance of the oral settlement agreement.

*Id.* (citations omitted).

Similarly, in *Franklin,* 61 Fed.Appx. at 686, another case similar to the one before this Court, the federal circuit rejected a plaintiff's claim that the settlement agreement she had executed was the product of coercion. Plaintiff Gillian Franklin had filed a petition for review of a decision terminating her employment with the United States Postal Service. *Id.* Prior to resolution of Franklin's appeal, the parties reached a settlement, which resulted in the administrative law judge dismissing her appeal. *Id.* Thereafter, Franklin petitioned the Board to have that settlement invalidated on the ground that her attorney lacked the authority to agree to the terms of the settlement and that the settlement was involuntary. *Id.* The Board granted Franklin's petition, vacated the dismissal of the appeal, and "remanded the case to allow Franklin an opportunity to rebut the presumption of her then-former attorney's authority to settle the appeal." *Id.* at 686–87. During the remand proceedings, Franklin again executed another settlement agreement which, again, resulted in the dismissal of her appeal by the administrative law judge. *Id.* at 687. However, as before, Franklin again petitioned the Board for review of the administrative law judge's dismissal of her appeal on the basis that the settlement agreement was involuntary and coerced, a claim the Board denied. *Id.* Specifically, Franklin argued that she was coerced into signing the settlement agreement because

the administrative judge, 'off the record,' threatened, misled and intimidated Franklin and her husband into signing

the settlement by stating that it was not possible for Franklin to receive compensatory damages in a case like this, and that if she did not sign the settlement agreement, she would lose out on her retirement.

*Id.* at 688. In affirming the Board's decision, the Federal Circuit, citing *Tiburzi,* stated that Franklin had failed to satisfy her burden "that would establish the possibility that she was coerced into signing the settlement agreement." *Id.* at 689. The court held that there was "substantial evidence support[ing] a finding that Franklin freely entered into a settlement agreement. . . ." *Id.* This evidence included "Franklin's signature on the settlement agreement, which was also signed by Franklin's husband and her attorney who were both present during settlement discussions." *Id.* at 688.

In this case, the Court finds plaintiff has presented nothing of substance to demonstrate that he involuntarily signed the settlement agreement. As in *Tiburzi* and *Franklin,* plaintiff's allegations of collusion and coercion are conclusory and unsubstantiated. Based on what has been presented to it, the Court concludes that there is substantial evidence supporting a finding that the agreement was voluntarily executed by plaintiff. This evidence includes his failure to deny that the signature on the agreement is his; the fact that in compliance with the agreement he tendered his resignation the day after he signed the agreement; and his acceptance of the $17,628 tendered by the defendants, which he has not attempted to return. Furthermore, plaintiff was represented by able counsel[16] who advocated on his be-

---

16. In fact, according to Mr. Henry's declaration, he declined payment for his representation of plaintiff because plaintiff indicated that he was unsure whether the agency would give him "extra compensation" and plaintiff "didn't feel the amount of the settlement was enough to pay" Mr. Henry. Because Mr. Henry felt that any additional demands

half. Def.'s Mot.; Ex. 17 (O'Shea Decl.) ¶ 5. Notably, plaintiff himself negotiated the inclusion of additional terms into the agreement, including a change in the characterization of his five day suspension and the ability to use the Civilian Personnel Office as a point of contact for future job references. Def.'s Mot., Ex. 17 (O'Shea Decl. ¶ 4); Ex. 18 (Declaration of Jeffrey B. Henry dated April 19, 2001) ("Henry Decl.") ¶¶ 4–5. And plaintiff does not deny that he was actively involved in negotiating the terms of the settlement agreement, although he now appears to argue, unconvincingly, that it would have been illogical for him to have negotiated for the ability to use the Civilian Personnel Office for references because "no reference is needed for Government Employment...." Pl.'s Stmt. ¶ 11. However, the Court does not find this argument, or any of plaintiff's other arguments, well-taken as they are not supported by any evidence in the record. On the other hand, however, the Court concludes that there is substantial evidence supporting a finding that plaintiff voluntarily entered into a settlement agreement, and therefore summary judgment for the defendants is warranted.

**SO ORDERED** on this 29th day of September, 2003.[17]

### *ORDER*

In accordance with the Court's Memorandum Opinion that is being issued contemporaneously with this Order, it is hereby

**ORDERED** that defendant Jeffrey Henry's Motion to Dismiss/For Summary Judgment [# 29] is granted. Summary judgment shall be entered in favor of Mr. Henry. It is further

"could ruin the good deal [plaintiff] already had[,] [Mr. Henry] told [plaintiff] [he] would waive [his] fees...." Henry Decl. ¶ 7.

**ORDERED** that the Federal Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment [# 30] is granted. Summary Judgment shall be entered in favor of the federal defendant. It is further

**ORDERED** that Plaintiff's Motions to deny the defendants' motions to dismiss [# 32, # 33] are denied. It is further

**ORDERED** that the complaint is dismissed with prejudice.

17. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.